UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEREK HECKEMEYER and MARIE HECKEMEYER, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Cause No:  4:12-cv-01532 ) |
| NRT MISSOURI, LLC, and JAMES DOHR, | ) ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

Plaintiffs' Motion to Remand should be denied.  This Court has jurisdiction under the Class Action Fairness Act ("CAFA") and traditional diversity jurisdiction.

First, CAFA requires only minimal diversity and potential damages exceeding $5,000,000.  Eighth Circuit precedent holds that an LLC is, for diversity jurisdiction purposes, a "citizen" of the state in which its ultimate corporate or individual parent is a citizen.  Consistent with this precedent, NRT is a citizen of Delaware and New Jersey for diversity jurisdiction purposes because it is an LLC whose members are citizens of those states.  As before, the requisite amount in controversy is present.

Diversity jurisdiction also exists because NRT is considered a citizen of Delaware and New Jersey for diversity jurisdiction purposes, and the amount in controversy obviously exceeds $75,000.  Plaintiffs transparently attempt to avoid this Court's jurisdiction by naming James Dohr, an NRT employee, as a party; but although Dohr is alleged to be a defendant, plaintiffs fail to allege any plausible theory of personal liability him.

**I.     This Court also has jurisdiction under the Class Action Fairness Act.**

The minimal diversity that exists between the parties is a sufficient basis for this Court's jurisdiction under the CAFA. Congress adopted CAFA for the express purpose of making it "harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction." S. Rep. No. 109-14, 109th Cong., 1st Sess. (2005) ("S. Rep.") at 5; *Bell v. The Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009). CAFA greatly expanded federal jurisdiction over class actions. *See, e.g., Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("The language and structure of CAFA itself indicates that Congress contemplated broad federal court jurisdiction."); S. Rep. at 43 (noting that CAFA "is intended to expand substantially federal court jurisdiction over class actions"). To achieve that purpose, CAFA grants district courts original jurisdiction over any class action in which: (1) there are at least one hundred putative class members; (2) the amount in controversy exceeds $5 million; and (3) any member of the putative class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d). Each of those factors exists here.

**A.     As an LLC, NRT's "citizenship" is the "citizenship" of its member.**

It is well-established that "[a]n L.L.C.'s citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *OnePoint Solutions L.L.C. v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007); *Putnam v. Engine and Transmission World, L.L.C.*, No. 4:11–CV–1492, 2012 WL 3064271, at *3 (E.D. Mo. July 27, 2012). The Eighth Circuit has described this issue as "resolved" by the Supreme Court's opinion in *Carden v. Arkomas Associates*, 494 U.S. 185 (1990). *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). Applying this controlling precedent here, NRT is a citizen of the states of which its members are citizens, Delaware and New Jersey.

>   B.   **CAFA did not change the controlling precedent that an LLC's citizenship is determined by the citizenship of its member.**

Undeterred by controlling precedent undermining their argument, plaintiffs contend that, under 28 U.S.C. § 1332(d)(10), NRT is a citizen of Missouri. That statutory section, which establishes a rule for determining the citizenship of "unincorporated associations" like unincorporated labor unions and insurance exchanges, does not apply to limited liability companies. Rather, basic canons of statutory construction indicate that Congress intended that the phrase "unincorporated association" be limited in application to "entities" that are nothing more than "mere collections of individuals." *See Navarro Sav. Ass'n. v. Lee*, 446 U.S. 458, 461 (1980).

The term is not properly applied to an LLC because an LLC is not simply the sum of its members, but instead has a distinct legal identity separate from each member. A Missouri LLC "is a distinct legal entity with the right to own property, sue and be sued, contract, and acquire and transfer property." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 120 (Mo. banc 2010); *see also, e.g.*, §§ 347.061, 347.063, 347.069, RSMo. Thus an LLC is not a "mere collection of individuals" and is not within the definition of an "unincorporated association" under CAFA.

>   1.   **CAFA does not use the phrase "unincorporated associations" to reference all non-corporate business forms.**

CAFA's statutory language reflects the distinction between LLCs and unincorporated associations. A statute should be read as a whole and construed consistently to give distinct meaning to all of its phraseology. *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) ("[A] legislative body generally uses a particular word with a consistent meaning in a given context."). The use of a different word or phrase in the same statute strongly implies that different meanings were intended. *United States v. Bean*, 537 U.S. 71, 76 n.4 (2002).

3

Two separate provisions of CAFA, codified at 28 U.S.C. §§ 1332(d)(9) and 28 1453(d)(2) use the phrase "other form of business enterprise" to reference all business forms other than a corporation. In both sections, the phrase "other form of business enterprise" is juxtaposed against the term "corporation" (*i.e.*, "a corporation or other form of business enterprise") to capture all business forms, and to except them from the application of CAFA in some cases relating "to the internal affairs or governance" of such businesses.

Section 1332(d)(10), however, uses the phrase "unincorporated association." Unlike §§ 1332(d)(9) and 1453(d)(2), § 1332(d)(10) does not place the phrase "unincorporated association" in a contrasting position to the term "corporation." Thus, when CAFA is read as a whole, the term "unincorporated association" is used in § 1332(d)(10) to refer to a particular subset of non-corporate business forms. In other words, CAFA distinguishes between corporations and "other forms of business enterprise," and those "other forms" include "unincorporated associations" and LLCs. The phrase "unincorporated association" therefore cannot be interpreted as embracing all non-corporate business entities without rendering the phrase "other form of business enterprise" superfluous.

      **2.**      **CAFA's legislative history describes the distinction between unincorporated associations and LLCs.**

The legislative history behind CAFA does not support an interpretation of "unincorporated associations" as including "limited liability companies." In fact, § 1332(d)(10) was intended to correct the anomaly under which some "unincorporated associations" would never be minimally diverse because they may be deemed to be citizens of any state in which they had customers. S. Rep. No. 109-14 at 46 (2005), *available at* http://www.gpo.gov/fdsys/pkg/CRPT-109srpt14/pdf/CRPT-109srpt14.pdf. Because this section was added to make it easier for an "unincorporated association" to remove a case under CAFA, it would be perverse to broaden

its meaning so as to prevent entities from removing when they would be entitled to do so under previously existing law.  Such an interpretation would create an anomaly undermining federal jurisdiction precisely where Congress intended to broaden federal jurisdiction.

Moreover, the Senate Report emphasizes that Congress was attempting to ensure that appropriate treatment of federal jurisdiction over: (a) unincorporated labor unions like that described in *United Steelworkers v. R. H. Bouligny, Inc.*, 382 U.S. 145 (1965); and (b) "inter-insurance exchanges" and "reciprocal insurance associations" like those at issue in *Baer v. United Services Auto. Assoc.*, 503 F.2d 393 (2nd Cir. 1974); *Tuck v. United Services Auto Assoc.*, 859 F. 2d 842 (10th Cir 1988); *Truck Ins. Exchange v. Dow Chem. Co.*, 331 F. Supp. 323 (W.D. Mo. 1971).  S. Rep. No. 109-14 at 45-46.  The Report did not mention the well-established law among the federal courts (including the controlling precedent in the Eighth Circuit) that the citizenship of an LLC turns on the citizenship of its member.

The Report also distinguishes a limited liability company from an "unincorporated association."  The Report specifically addresses "limited liability companies" in discussing § 1332(d)(9). S. Rpt. 109-14 at p. 45.  It further states that when the drafters attempted to statutorily embrace all entities other than corporations, like LLCs, they used the phrase "other form of business enterprise" to embrace all such entities. *Id.* at 45 ("The phrase 'other form of business enterprise' is intended to include forms of business entities other than corporations, including, but not limited to, limited liability companies, limited liability partnerships, business trusts, partnerships and limited partnerships.").  Thus, adopting plaintiffs' view would contravene the basic rule of determining statutory intent that legislators use a particular word or phrase "with a consistent meaning in a given context."  *Erlenbaugh*, 409 U.S. at 243.

5

### 3. Prior federal case law distinguishes limited liability companies from unincorporated associations.

Consistent with the rules of statutory construction, the Court should presume that Congress legislated consistently with existing law and with knowledge of the courts' interpretations of particular legal terms.  *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with . . . precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them.").  Where Congress is silent about existing law, courts conclude that Congress chose not to change existing law.  *DiTolla v. Doral Dental IPA*, 469 F.3d 271, 275 (2d Cir. 2006).

Pre-CAFA federal law recognized that "unincorporated associations" differ from limited liability companies.  Generally, courts defined "unincorporated association" to mean "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective."  *Comm. for Idaho's High Desert v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996); *see also Four Way Plant Farm, Inc. v. NCCI*, 894 F. Supp. 1538, 1545 (M.D. Ala. 1995) (an unincorporated association is "a group of persons acting together to prosecute a common purpose or enterprise").  In a case addressing the issue of diversity jurisdiction, the Supreme Court has stated "unincorporated associations remain mere collections of individuals." *Navarro Sav. Ass'n. v. Lee*, 446 U.S. 458, 461 (1980).

In addition to this caselaw, Federal Rule of Civil Procedure 23.2 also uses the term "unincorporated association," and provides that it "applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties."  Rule 23.2's "real or main purpose . . . has been to give 'entity treatment' to the association when for formal purposes it cannot sue or be sued as a jural person under Rule

6

17(b)." *Benn v. Seventh-Day Adventist Church*, 304 F. Supp. 2d 716, 723 (D. Md. 2004) (quoting the Advisory Committee notes).  In recognition of the purpose of Rule 23.2, "most courts have held that the availability of Rule 23.2 turns on the unincorporated association's capacity to sue and be sued under state law." *Id.* at 723.  But, under Missouri law, an LLC "is a distinct legal entity with the right to own property, sue and be sued, contract, and acquire and transfer property." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 120 (Mo. banc 2010).

The conclusion that the use of the term "unincorporated association" in federal law is focused upon "mere collections of individuals" and not independent legal entities such as a limited liability company is further reinforced by the text of Rule 17 and case law interpreting it. In addressing capacity to sue or be sued, Rule 17(b) first recognizes, in three subparts, three categories of parties—individuals, corporations, and "all other parties"—and notes that it is the law of their domicile, organization, or location that determines their capacity to sue.  In an exception to the third category, subsection 17(b)(3)(A), the rule uses the term "unincorporated association" in conjunction with the term "partnership" to create capacity to sue or be sued in federal question cases where the law of the state would not otherwise recognize such capacity, but otherwise defers to state law in diversity cases. *See* 4 Moore's Fed. Pract. §17.26[4] at pp. 17-113 – 17-116 (3rd Ed. 2009).  Again, the focus of the term is on "mere collections of individuals" that have no separate legal existence of their own, not upon distinct legal entities such as a limited liability corporation.

As noted above, the Senate Report did not express any intent to expand this well-established understanding of the term "unincorporated association" to include LLCs, and did not even mention the well-established law concerning citizenship of an LLC for diversity purposes.

7

Plaintiffs interpret CAFA as statutorily gutting this well-established law, but without any support in the legislative history or statutory language.

Contrary to Plaintiffs' contention, therefore, NRT is not an "unincorporated association" within the scope of § 1332(d)(10), but is a Delaware LLC which, in accordance with well-established diversity of citizenship jurisdiction law, is a resident of Delaware and New Jersey.

C.   **Assuming that § 1332(d)(10)'s "unincorporated association" provision applies, NRT's principal place of business is in Delaware.**

Even assuming that, for purposes of CAFA diversity jurisdiction, NRT is an "unincorporated association" as described in Section 1332(d)(10), it's citizenship is the state of its incorporation and principal place of business. NRT's citizenship is still in Delaware (the state of its incorporation) and New Jersey (the state of its principal place of business).

A company's principal place of business for diversity of citizenship purposes is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1186 (2010).  "[T]he 'nerve center' will typically be found at a corporation's headquarters." *Id*.  Even if a person with "ultimate authority" has an office in Missouri, a different state is nevertheless the nerve center if it is where the overall direction, control, and coordination of the company occurs. *Centrue Bank v. Golf Disc. of St. Louis, Inc.*, No. 4:10CV16 TIA, 2010 WL 4178942, at *3 (E.D. Mo. Oct. 20, 2010).

NRT's nerve center is in New Jersey.  Its only member, Coldwell Banker Residential Brokerage LLC, is based in New Jersey, and each of its member's members is a Delaware LLC with a New Jersey principal place of business.  NRT's ultimate corporate parent, whose officers have ultimate control over NRT and its business is a Delaware corporation with a New Jersey principal place of business. As outlined in the Declaration of Duhig, attached as Exhibit 1,

8

NRT's board of directors and officers work out of New Jersey.  NRT's President, CEO, CFO, Treasurer, Secretary, General Counsel, Assistant Secretary, Executive Vice Presidents, and Senior Vice Presidents work out of NRT's corporate headquarters in New Jersey.  The fact that NRT conducts business in Missouri does not undermine or alter the fact that its "nerve center" is in New Jersey.  *Hertz Corp.*, 130 S.Ct. at 1194 ("For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York.").  This evidence is more than sufficient to establish that NRT's principal place of business is in New Jersey.  *See, Doe v. Prudential Ins. Co.*, No. 4:10CV297, 2010 WL 2326065, at *2 (E.D. Mo. June 8, 2010).

Plaintiffs cite to three prior, unrelated pleadings from various Missouri State Court cases, claiming that these pleadings somehow constitute an admission that NRT's principal place of business is Missouri.  In one of these supposed "admissions," NRT admits only that "its main business office" is located in St. Louis County.  *See* Exh. D to Mtn. to Remand.  This statement, however, does not answer the "nerve center" question that the Supreme Court held controls for purposes of diversity jurisdiction.  In another supposed "admission," NRT admits that it has its "corporate offices" in Missouri.  *See* Exh E to Mtn. to Remand.  Again, this does nothing to contradict the attached Declaration demonstrating that NRT's "nerve center" is located in New Jersey.  Finally, Plaintiffs cite to an incomplete and unsigned "Counterclaim/Third Party Petition in Interpleader" allegedly filed in St. Louis County Small Claims Court.  For unexplained reasons, Plaintiffs do not provide the entire pleading, but only pages one and four.  Page one of this small claim's court filing does state that NRT Missouri's state of organization and principal place of business are Missouri.  *See Exh. C* to Mtn. to Remand.  The reference to a Missouri state

9

of organization is obviously incorrect, and Plaintiffs have no official records to dispute that NRT Missouri, LLC is an LLC organized under Delaware law.  The other allegation regarding "principal place of business" again says nothing substantive regarding the appropriate "nerve center" test required by Federal diversity of citizenship law.

These exhibits, in short, do nothing to materially inform the analysis of the "nerve center" question.  Moreover, prior assertions of the location of business activities in legal documents are not dispositive of a party's citizenship for diversity purposes.  The Supreme Court, for example, has rejected arguments that statements in an SEC filing regarding the location of a corporation's "principal executive offices" would establish the location of the corporation's nerve center. *Hertz Corp.*, 130 S. Ct. at 1195.  Moreover, the other pleadings that plaintiff cites from either small claims or circuit court cases given no indication of any analysis of the particular legal standards applicable to federal LLC diversity of citizenship law and jurisprudence.  Because they arise in a different context, and address different legal issues, they are irrelevant to the determination of whether, under federal law, NRT's "nerve center" is in New Jersey.

**II.     Plaintiffs have not satisfied their burden of proving that the local controversy exception applies to this case.**

"CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006).  The Senate Report explained that the local controversy exception "is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole." S. Rep. 109-14, at 39.  "[I]n assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of [the] criteria is to identify a truly local controversy—a controversy that uniquely affects a

10

particular locality to the exclusion of all others." *Id*. Plaintiffs' claim that the "local controversy exception" applies is a request by Plaintiffs for this Court to abstain from hearing this matter; it is not claim that this Court lacks jurisdiction: "[t]he local controversy provision operates as an abstention doctrine [and] does not divest the district court of subject matter jurisdiction." *Graphic Communications Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011).

To determine whether this case "uniquely affects" Missouri, the Court must assess whether: (1) greater than two-thirds of the class members are Missouri citizens; (2) whether at least one defendant against whom significant relief is sought and whose conduct forms the significant basis for the claims asserted, is a Missouri citizen; and (3) whether the principal injuries resulting from the alleged wrong were incurred in Missouri. 28 U.S.C. § 1332(d)(4)(A).

First, as explained in more detail below, plaintiffs have not proven that two-thirds of the class members are Missouri citizens. Although they allege that the class will include people who purchased houses in St. Louis County, simply purchasing a house in St. Louis County does not deem one a citizen of Missouri. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) (court was "not persuaded" that if 93.8% of the class were "Alabama residents, then surely two-thirds of the entire plaintiff class are Alabama citizens").

Second, there is not a significant defendant that is a Missouri citizen. The only Missouri citizen, James Dohr, was fraudulently named as a defendant and plaintiffs have failed to plead a plausible claim for relief against him. As set forth in Defendants' Motion to Dismiss, Plaintiffs' Complaint fails to articulate a colorably claim against Dohr. This failure is even more manifest in the context of analyzing whether Plaintiffs have properly asserted that Dohr's conduct "forms the significant basis for the claims asserted." Plaintiffs fail to allege that either they, or any

11

putative class member, received any purported misrepresentation from Dohr, or that Dohr had any personal involvement whatsoever in any of the real estate sales in question. They assert no colorable claim that Dohr can be, let alone will be, found to be personally liable for alleged misrepresentations in hundreds, if not thousands, of real estate transactions that he never touched. While Dohr has clearly been sued for the sole purpose of attempting to avoid removal, the Complaint's less than cursory mention of his supposed involvement does not demonstrate the requisite substantiality. On the face of the pleadings, plaintiffs have no colorable claim against Dohr. *See Anderson*, 724 F.2d at 84. And, as established above, NRT is not a Missouri citizen for diversity jurisdiction purposes.

Finally, plaintiffs did not provide any evidence whatsoever that the alleged damages were incurred in Missouri. Plaintiffs cannot simply rest on their allegations in the complaint—which themselves do not plausibly allege damages in any event—in order to satisfy their heavy burden of proving that this narrow exception applies.

**III.     Plaintiffs have not satisfied their burden of proving that the home state controversy exception applies to this case.**

The home state exception would counsel abstention only if plaintiffs had proved that "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of" Missouri when they filed this lawsuit. 28 U.S.C. § 1332(d)(4)(B). In order to avail themselves of this exception, Plaintiffs must provide evidence sufficient to support a factual finding in their favor as to each of the required elements of the exception. *See, e.g., Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 804, 811 (5th Cir. 2007) ("Each CAFA exception requires the court to make an objective factual finding regarding the percentage of class members that were citizens of Louisiana at the time of filing the class petition."). Plaintiffs will satisfy their burden only by submitting admissible

12

evidence that proves by the preponderance of the evidence that the facts support such an objective factual finding.  *Barricks v. Barnes-Jewish Hosp.*, No. 4:11-CV-1386, 2012 WL 3548038, at *1 (E.D. Mo. Aug. 12, 2012); *Preston*, 485 F.3d at 811.

### A. The primary defendant is not a citizen of Missouri.

Plaintiffs must prove that the primary defendant, NRT, is a Missouri citizen.  As established above, controlling precedent holds that NRT is a citizen of Delaware and New Jersey because that is the citizenship of NRT's members.

Mr. Dohr is not, by any stretch of the imagination, a "primary defendant," and is not even a proper party to this lawsuit.  There is no allegation of primary liability against Dohr, and no factual allegations that Dohr personally did anything that might violate the MMPA.  Plaintiffs have not pled any colorable allegations that Dohr is personally liable for every broker's alleged actions in listing thousands of homes.  Moreover, there is no evidence that Dohr would have assets to pay any material part of a hypothetical judgment.  Accordingly, plaintiffs have not met their burden of proving that the primary defendant is a Missouri citizen.

### B. Plaintiffs have failed to meet their burden of proof regarding the citizenship of the class members.

Plaintiffs have offered no evidence regarding the citizenship of putative class members at any time, let alone on the day they filed suit.  28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff classes shall be determined . . . as of the date of filing of the complaint.").  In the absence of any such evidence, the plaintiffs cannot sustain their burden of proof.

In their Motion to Remand, plaintiffs misrepresent the allegations of their petition as alleging that all "members of the putative class are citizens of the State of Missouri." In fact, plaintiffs allege only that the putative class would include people who were "Missouri residents"

13

who purchased a house in St. Louis County.  Complaint, at ¶ 22.  Thus plaintiffs' allegations address the residence and not the citizenship of class members.  "[I]t has long been settled that residence and citizenship were wholly different things within the meaning of the Constitution and the laws defining and regulating the jurisdiction of the circuit courts of the United States; and that a mere averment of residence in a particular state is not an averment of citizenship in that state for the purposes of jurisdiction."  *Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905).  Of course, one's residency only answers half of the question; one's citizenship turns on where one resides *and* where one intends to remain.  *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992).  Plaintiffs have put forward no evidence regarding where the plaintiffs and the putative class members are truly citizens, and have not even obliquely address citizenship in the Complaint.  *See Evans*, 449 F.3d at 1166.  Thus, even if the Court considered plaintiffs' allegations in the Complaint as evidence supporting their Motion to Remand, their allegations of residency do not

    NRT is aware of decisions where the Court accepted evidence of past residence of class members as proof of citizenship.  In each of those cases, however, the plaintiff put forward actual evidence of the class members' last known residence as proof of their Missouri residence on the date the lawsuit was filed, and did not rest solely on the allegations in their Complaint.  *Barricks v. Barnes-Jewish Hosp.*, 2012 WL 3548038 (E.D. Mo. 2012) (evidence that 336 of the 472 class members resided in Missouri when the lawsuit was filed); *Randall v. Evamor, Inc.*, 2010 WL 1727977 (E.D. Mo. 2010) (evidence that 95% of class members resided in Missouri when the lawsuit was filed); *Tonnies v. Southland Imports, Inc.*, 2009 WL 3172565 (E.D. Mo. 2009) (affidavit stating that 84% of the class members resided in Missouri when the lawsuit was filed); *Clover v. Sunset Auto Co.*, 2009 WL 2757050 (E.D. Mo. 2009) (evidence that 92% of

14

class members resided in Missouri when the lawsuit was filed); *Redd v. Suntrup Hyundai, Inc.*, 2009 WL 2568054 (E.D. Mo. 2009) (evidence that 72.7% of class members resided in Missouri when the lawsuit was filed).  The Court first denied plaintiff's motion to remand on the basis that the plaintiff had not put forward the requisite proof of the plaintiff's citizenship.  *Tonnies*, 2009 WL 3172565, at *3.  Unlike these prior cases, where the plaintiff presented statistical evidence concerning the percentage of class members who were residents of Missouri on the date the case was filed, plaintiffs here do not even attempt to submit any such evidence for the Court's consideration.  Thus plaintiffs have not satisfied their burden of proof and their Motion to Remand must be denied.

**IV.     This Court has diversity jurisdiction.**

Diversity jurisdiction exists if the parties are "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000."  28 U.S.C. § 1332(a)(1).  Plaintiffs simply contend that Dohr's presence as a named defendant defeats complete diversity and that NRT has not met its burden of establishing the amount in controversy because it did offer specific evidence relating to the named class representatives.  Both contentions are incorrect.

**A.     The Court should disregard Dohr's citizenship because plaintiff has not pled a good faith, actionable claim against him under the MMPA.**

"Courts have long recognized fraudulent joinder as an exception to the complete diversity rule. . . . When determining if a party has been fraudulently joined, a court considers whether there is any reasonable basis in fact or law to support a claim against a nondiverse defendant." *In re Prempro Products Liability Litigation*, 591 F.3d 613, 620 (8th Cir. 2010).  This determination depends on whether "materials in the record, including affidavits . . . establish facts supporting claims against the defendant."  *Gilmore v. Lowe's Home Centers, Inc.*, 2012 WL 2848115, at *2 (E.D. Mo. 2012).  Fraudulent joinder must be assessed from the "face of the

15

pleadings." *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983).

Under the MMPA, plaintiffs must prove that the defendant committed some act in violation of the MMPA. However, plaintiffs have not alleged that James Dohr did anything, had anything to do with plaintiffs, or even knew about the real estate listings of the houses class members purchased. Other than using the word "responsible" in an irrelevant statutory quotation in paragraph 12 of the Complaint, plaintiffs have made no allusion to a suggestion that Mr. Dohr is personally liable to Plaintiffs or the putative class, let alone stated a plausible set of facts demonstrating the existence of such a claim personally against Dohr. Plaintiffs have not pled any facts whatsoever that would support a theory of personal liability against Dohr. Because plaintiffs have not pled any facts supporting Dohr's purported liability under the MMPA, he should be dismissed from the lawsuit because he was fraudulently joined as a nominal defendant. *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 951 (8th Cir. 2011); *Halloran v. Houlihan's Restaurants, Inc.*, No. 4:11–CV–01028, 2012 WL 1667598, at **2-3 (W.D. Mo. May 11, 2012); *Caranchini v. Kozeny & McCubbin, LLC*, No. 4:11–CV–0464, 2011 WL 5921364, at *4 (W.D. Mo. Nov. 28, 2011).

  **B.**  **The potential amount in controversy clearly exceeds $75,000.**

The purported class includes every Missouri resident who bought a house in St. Louis County from a seller who employed as the seller's agent one of the largest real estate companies in the region. "The pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (citations omitted). In calculating the amount in controversy, NRT relied on plaintiffs' allegations to determine what the scope of this case is, including (1) actual damages; (2) punitive damages; (3) attorney fees; and (4) injunctive relief, which would affect NRT's prospective operations.

16

Plaintiffs object to defendants' estimate of the amount in controversy by boilerplate language, failing to explain any perceived deficiency.  The only supposed flaw plaintiffs point to in the damages calculation is their contention that defendant did not specifically describe the named class representatives' supposed damages; but plaintiffs apparently overlooked the detailed spreadsheet of data regarding the class members, which specifically referenced the named class representatives' house on the eighth page of the spreadsheet, a home located at 16710 Clayton Road, with 2,708 square feet and a value of $310,000.  Moreover, several individual class members have alleged damages far in excess of the jurisdictional minimum, as demonstrated by the spreadsheet listing individual class members with allegedly over-listed square footage worth in excess of $75,000.  *Tebeau v. General Motors Corp.*, 2011 WL 4953999, at *1 (E.D. Mo. Oct. 18, 2011) ("Where there are multiple plaintiffs, only one plaintiff must allege a claim that is in excess of $75,000 in order for the Court to have subject-matter jurisdiction over the entire Article III "case or controversy.").  Without pointing to any legitimate flaw in the calculations exhaustively documented in the Notice of Removal, plaintiffs' objections on this basis cannot be taken seriously.  In a case of this potential magnitude, the $75,000 requirement is satisfied in the potential attorney fees to be expended alone.  The amount in controversy requirement is satisfied and diversity jurisdiction is appropriate.

        ARMSTRONG TEASDALE LLP

BY:  /s/ Winston E. Calvert
      Jay A. Summerville    #24824
      Daniel C. Nelson      #40518
      Winston E. Calvert     #57421
      7700 Forsyth Blvd., Suite 1800
      St. Louis, Missouri 63105
      314.621.5070
      314.621.5065 (facsimile)

ATTORNEYS FOR DEFENDANTS NRT MISSOURI, LLC AND JAMES DOHR

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2012, a copy of the foregoing was filed electronically with the Court, with notice of the filing generated and sent electronically by the Court's CM/ECF system to:

GRAY RITTER & GRAHAM, P.C.
Patrick Hagerty
Thomas Neill
701 Market Street, Suite 800
St. Louis, Missouri 63101
Counsel for Plaintiffs

MURPHY PROPERTY TAX CONSULTING INC.
William F. Murphy
2705 Dougherty Ferry Road, Suite 102
St. Louis, Missouri 63122
Counsel for Plaintiffs

        /s/ Winston E. Calvert