UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEREK HECKEMEYER and MARIE HECKEMEYER, on behalf of themselves and others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 4:12CV01532 AGF ) |
| NRT MISSOURI, LLC, and JAMES DOHR, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This putative class action is before the Court on Plaintiffs' motion to remand the case to the state court in which it was filed, due to lack of subject matter jurisdiction. The motion presents an issue of first impression in the Eighth Circuit–whether for purposes of jurisdiction under the Class Action Fairness Act ("CAFA"), the citizenship of a limited liability company ("LLC") is based upon the citizenship of its members, or upon its state of organization and principal place of business. The Court concludes that the latter is true and that Defendants have not met the requirements for jurisdiction under CAFA or traditional diversity jurisdiction. Accordingly, the motion to remand shall be granted.

**BACKGROUND**

Plaintiffs, husband and wife, are citizens of Missouri. In their complaint filed in Missouri state court, they assert that the two Defendants, (1) NRT Missouri, LLC, a real

estate services firm, and (2) its designated broker James Dohr, knowingly engaged in the systematic practice of misrepresenting the square footage of the homes that Plaintiffs and the putative class members purchased, by including footage of the empty space on the second floor above a two-story entry foyer or two-story great room.  Plaintiffs seek actual and punitive damages (both of unspecified amounts), attorney's fees, and injunctive relief, all under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020.  The complaint defines the putative class as follows:

> All Missouri residents who purchased a one-and-a-half (1.5) story or two (2) story residential property for personal, family or household purposes in St. Louis County which, at the time of the purchase, was listed by NRT Missouri, LLC, and where NRT Missouri, LLC represented in writing that the property had greater square footage than it actually possessed, and where the open space above the first floor of a two-story foyer or a two story great-room was included in the represented square feet.

(Doc. No. 7 at 13.)

Dohr's liability is premised upon the allegations that as NRT Missouri's designated broker, he was responsible for supervising NRT Missouri's brokers and salespeople and, pursuant to Mo. Rev. Stat. § 339.760, for adopting a written policy covering various matters, including the subject matter of the lawsuit.

Defendants removed the action to this Court, asserting traditional diversity jurisdiction under 28 U.S.C. § 1332(a), as well as federal jurisdiction under CAFA, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).  Defendants asserted that complete diversity of citizenship existed for purposes of § 1332(a) because NRT Missouri was a citizen of Delaware and New Jersey, and Dohr was fraudulently joined so his citizenship should not be taken into account.  NRT Missouri's asserted

citizenship was based on the following allegations of its layers of membership:

> •       NRT Missouri's sole member is Coldwell Banker Residential Brokerage LLC, which is a Delaware LLC with its principal place of business in New Jersey.
>
> •       Coldwell Banker Residential Brokerage LLC's sole member is NRT LLC, which is a Delaware LLC with its principal place of business in New Jersey.
>
> •       NRT LLC's sole member is Realogy Services Group LLC, which is a Delaware LLC with its principal place of business in New Jersey.
>
> •       Realogy Services Group LLC's sole member is Realogy Corporation, which is a Delaware corporation with its principal place of business in New Jersey.

Defendants asserted that the general rule–that an LLC's citizenship is based on the citizenship of its members–applies under CAFA, such that diversity of citizenship under CAFA, 28 U.S.C. § 1332(d), also exists.  Defendants further asserted that, as required for jurisdiction under CAFA, the total amount in controversy is over $5 million and the class consists of at least 100 members.  Defendants did not discuss the $75,000 amount in controversy for traditional diversity jurisdiction under § 1332(a).

In support of their motion to remand the case to state court, Plaintiffs argue that traditional diversity jurisdiction does not exist because Dohr was not fraudulently joined, and because Defendants did not show that the requisite amount in controversy of $75,000 is met with respect to any one Plaintiff.  Plaintiffs argue that jurisdiction under CAFA does not exist because CAFA changed the general rule with respect to an LLC's citizenship, such that under CAFA an LLC's citizenship is based upon the state in which the LLC is organized and where its principal place of business is.  According to Plaintiffs,

NRT Missouri's principal place of business is in Missouri. They also argue that Defendants did not establish CAFA's requisite $5 million amount in controversy. Plaintiffs argue, alternatively, that the "home state" exception to jurisdiction under CAFA applies here.

In response, Defendants reassert the contentions in their notice of removal, adding that for purposes of traditional diversity jurisdiction, "the amount in controversy obviously exceeds $75,000." (Doc. No. 24 at 1.) Alternatively, Defendants argue that if NRT Missouri is deemed an "unincorporated association" within the meaning of CAFA, it is nonetheless a citizen of Delaware, under whose laws it is organized, and of New Jersey, where it has its principal place of business. Lastly, Defendants argue that the exception to jurisdiction under CAFA relied upon by Plaintiffs does not apply here.

## DISCUSSION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a defendant in state court may remove the case to federal court if the defendant can demonstrate that the federal court has original jurisdiction over the case. Once a case is removed to federal court, a plaintiff may move to remand to state court if the federal court lacks subject matter jurisdiction. *Id.* § 1447(c).

**Traditional Diversity Jurisdiction**

Under 28 U.S.C. § 1332(a)(1), federal district courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs, and is between citizens of different states." Defendant, as the party seeking removal and opposing remand, has the burden of establishing federal subject matter jurisdiction. *See Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator*, 561 F.3d 904, 912 (8th Cir. 2009). The Court should resolve all doubts about traditional diversity jurisdiction in favor of remand. *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011).

The Court first concludes that traditional diversity jurisdiction fails because of Defendants' failure to show compliance with the $75,000 amount in controversy requirement. In putative class action cases, removal based on traditional diversity jurisdiction is proper if a defendant can show, by a preponderance of the evidence, that one plaintiff meets the amount in controversy requirement, as the Court can exercise supplemental jurisdiction over the other plaintiffs' claims under 28 U.S.C. § 1367. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

Punitive damages are included in calculating the amount in controversy, but are given greater scrutiny than claims for actual damages because punitive damages are speculative in nature. *State of Mo. ex rel. Pemiscot Cnty. v. W. Sur. Co.*, 51 F.3d 170, 173-74 (8th Cir. 1995). Attorney's fees can also be considered if the governing statute allows for their recovery, as does the MMPA here. *See Crawford v. F. Hoffman–La Roche, Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001). Also, the value of injunctive relief is determined by "the value to the plaintiff of the right that is at issue." *Usery v. Anadarko Petroleum Corp.,* 606 F.3d 1017, 1019 (8th Cir. 2010). The punitive damages and attorney's fees available to each plaintiff cannot be aggregated to meet the jurisdictional

amount. *Kessler v. Nat'l Enters., Inc.*, 347 F.3d 1076, 1080 (8th Cir. 2003) (citing *Crawford*, 267 F.3d at 766-67).

Here, the record suggests that the claim of any one Plaintiff would be less than $75,000, and Defendants have made no effort to show otherwise. Therefore, the Court concludes that Defendants have not met their burden to establish that this Court has traditional diversity jurisdiction over the case.

The Court also finds persuasive Plaintiffs' argument that traditional diversity jurisdiction fails for the additional reason that there is not complete diversity of citizenship, in that Dohr and Plaintiffs are Missouri residents. Diversity jurisdiction under § 1332(a)(1) requires "complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Cascades Dev. of Minn. LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012) (citation omitted).

An LLC's citizenship, for purposes of traditional diversity jurisdiction, is the citizenship of each of its members. *OnePoint Solutions L.L.C. v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Thus, there is diversity between Plaintiffs and NRT Missouri for purposes of traditional diversity jurisdiction. But Dohr is a citizen of Missouri and his presence as a Defendant defeats traditional diversity jurisdiction.

"[A] plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has "no real connection with the controversy." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (citation omitted). To prove that a plaintiff fraudulently joined a diversity-destroying defendant, the Eighth Circuit requires a defendant seeking removal to prove that the plaintiff's claim against the

diversity-destroying defendant has "no reasonable basis in fact and law." *Id.* (citation omitted). Joinder is not fraudulent where "there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Id.;* *see also Block,* 665 F.3d at 948. The Eighth Circuit has instructed that "where the sufficiency of the complaint against the non-diverse defendant is questionable, the better practice is for the federal court not to decide the doubtful question in connection with the motion to remand but simply to remand the case and leave the question for the state courts to decide." *Knudson*, 634 F.3d at 976.

Here the Court concludes that the sufficiency of the complaint against Dohr is questionable. The MMPA prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." Mo. Rev. Stat. § 407.020.1. Missouri law recognizes certain supervisory responsibilities of designated brokers such as Dohr. *See* Mo. Rev. Stat. § 339.710. The Court believes that it would be best for a Missouri state court to decide Dohr's potential liability in the present action.

**Jurisdiction under CAFA**

CAFA was enacted in 2005 to expand federal court jurisdiction over class actions. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). CAFA grants district courts original jurisdiction over any class action in which (1) there are at least 100 putative class members; (2) the total amount in controversy, aggregating the claims of the individual class members, exceeds $5 million; and (3) any member of the putative class is

a citizen of a state different from any defendant (referred to as "minimal diversity").  28 U.S.C. § 1332(d); *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013).

"Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction." *Westerfield*, 621 F.3d at 822.  A defendant seeking removal under CAFA must prove each of the jurisdictional elements by a preponderance of the evidence.  *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).  Once the initial jurisdictional requirements have been established, the burden shifts to the party seeking remand to establish that one of CAFA's express jurisdictional exceptions applies.  *Westerfield*, 621 F.3d at 822.  If a CAFA exception raises any doubt, the applicability must be resolved against the party seeking remand.  *Id.* at 823.

Here the Court concludes that Defendants have established by a preponderance of the evidence the CAFA jurisdictional requirements of numerosity (at least 100 putative class members) and amount in controversy (a class total of over $5 million),[1] but have failed to establish CAFA diversity of citizenship.

In § 1332(d)(10), CAFA provides that "for purposes of [CAFA], an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  The Eighth Circuit has not yet had the opportunity to address the question of whether an LLC is to be treated for CAFA purposes as "an unincorporated association" under § 1332(d)(10).  The

---

[1] *See, e.g., Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 945-46 (8th Cir. 2012).

only federal circuit to address the question, the Fourth Circuit, held that an LLC is properly considered "an unincorporated association" within the meaning of § 1332(d)(10), and thus is deemed to be a citizen of the state both where it has its principal place of business and the state under whose laws it is organized. *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698 (4th Cir. 2010).

The Fourth Circuit's decision is supported by CAFA's legislative history, specifically Senate Report No. 109-14,[2] which shows that Congress chose to treat LLCs like corporations for purposes of determining citizenship under CAFA. *See also Bond v. Veolia Water Indianapolis, LLC*, 571 F. Supp. 2d 905, 909-12 (S.D. Ind. 2008) ("In enacting subsection (d)(10) as part of CAFA, Congress directed the courts to treat [the

---

[2] *See* S. Rep. No. 109-14 at 43, 45-46 (Feb. 28, 2005), reprinted in 2005 U.S.C.C.A.N. 3 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant . . . . New subsection 1332(d)(10) provides that for purposes of this new section and section 1453 of title 28, an unincorporated association shall be deemed to be a citizen of a state where it has its principal place of business and the state under whose laws it is organized. This provision is added to ensure that unincorporated associations receive the same treatment as corporations for purposes of diversity jurisdiction. The U.S. Supreme Court has held that '[f]or purposes of diversity jurisdiction, the citizenship of an unincorporated association is the citizenship of the individual members of the association.' This rule 'has been frequently criticized because often . . . an unincorporated association is, as a practical matter, indistinguishable from a corporation in the same business.' Some insurance companies, for example, are 'inter-insurance exchanges' or 'reciprocal insurance associations.' For that reason, federal courts have treated them as unincorporated associations for diversity jurisdiction purposes. Since such companies are nationwide companies, they are deemed to be citizens of any state in which they have insured customers. Consequently, these companies can never be completely or even minimally diverse in any case. It makes no sense to treat an unincorporated insurance company differently from, say, an incorporated manufacturer for purposes of diversity jurisdiction. New subsection 1332(d)(10) corrects this anomaly.")

wide range of unincorporated associations created under state law, including LLCs] like corporations for purposes of CAFA jurisdictional issues.  It is difficult to think of language that could have expressed that intention any more clearly than to use the same phrase ["unincorporated associations"] that the Supreme Court had used" in its prior case law to describe this wide range of entities); *Marroquin v. Wells Fargo, LLC*, No. 11cv163-L (BLM), 2011 WL 476540, at *2 (S.D. Cal.) (Feb. 3, 2011) (treating an LLC as an unincorporated association under CAFA); *cf. Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, No. 12-11, 2012 WL 6098502, at *1 (D.V.I. Dec. 7, 2012) (treating a limited liability partnership as an unincorporated association under CAFA; "We do not equate [the LLP's] citizenship, for present purposes, with the citizenship of each of its partners or members.").

The Fourth Circuit rejected the argument advanced by the defendant in that case, an argument also advanced by Defendants herein, that Congress intended "unincorporated association" to refer only to those non-corporate entities that, unlike an LLC in Missouri, lack a distinct legal identity under the law of the state where they are organized.  This argument is based on the use of the phrase "a corporation or other form of business enterprise" in two sections of CAFA excluding from CAFA's coverage disputes over the internal affairs and governance of these entities (28 U.S.C.A. §§ 1332(d)(9)(B), 1453(d)(2)).  The argument posits that "other form of business enterprise" was the term that Congress employed when it wanted to refer to all non-corporate entities.  Thus, the argument goes, the term "unincorporated association" in § 1332(d)(10) refers to only a narrower subset of non-corporate business forms, a class that excludes entities having a

distinct legal identity under the law of the state in which they are organized.

The Fourth Circuit reasoned that the term "business enterprise" includes both corporations and non-corporate entities. Use of the terms "business enterprise," "corporation," and "unincorporated association" reflects Congressional intent to subdivide the entities covered by "business enterprise" into two categories: corporations and non-corporate entities. CAFA refers to the latter as "unincorporated associations." To extend CAFA's application, Congress narrowly defined the citizenship of noncorporate entities to include only one or two states, thereby extending federal court jurisdiction over class actions. *Ferrell*, 591 F.3d at 704-05.

This Court finds the reasoning of the Fourth Circuit persuasive and concludes, as did the Fourth Circuit, that Congress chose to treat LLCs like corporations for purposes of determining citizenship under CAFA.[3]

This brings the Court to the question of where NRT Missouri's principal place of business is. In *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), the Supreme Court adopted the "nerve center" test for determining a corporation's principal place of business, defining "principal place of business" as the place where "a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1192. The nerve center will

---

[3] The Court adds that the Eighth Circuit Court of Appeals "adhere[s] to the policy that a sister circuit's reasoned decision deserves great weight and precedential value." *In re Miller*, 276 F.3d 424, 428-29 (8th Cir. 2002) (citations omitted). "The interest in avoiding inter-circuit conflicts is especially strong when the potentially conflicting decisions would present different interpretations of federal law intended to be uniformly applied on a nationwide scale." *Nat'l Ind. Meat Packers Ass'n v. EPA*, 566 F.2d 41, 43 (8th Cir. 1977).

"normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination . . . not simply an office where the corporation holds its board meetings." *Id.* In determining a corporation's nerve center, a court is to apply a qualitative, not quantitative, test; there is no weighing of different factors. *Id*. at 1193-94.

The Court agrees with the parties that the nerve center test applies here to determine NRT Missouri's principal place of business. *See Bond*, 571 F. Supp. 2d at 913) ("By adopting the same language ["principal place of business"] that applies to corporations under 28 U.S.C. § 1332(c), CAFA calls upon courts to apply the same test [to LLCs] that applies to corporations.")

Plaintiffs assert that NRT Missouri's principal place of business is Missouri, as evidenced by NRT Missouri's "judicial admissions" in several cases that its principal place of business and corporate headquarters were in Missouri. Plaintiffs argue that NRT Missouri should be judicially estopped from now denying that its principal place of business is Missouri. Plaintiffs maintain further that indeed NRT Missouri's principal place of business is Missouri, in that, operating and doing business under the fictitious name of "Caldwell Banker Gundaker," NRT Missouri maintains its corporate office in St. Louis County, Missouri. (Doc. No. 16 at 15-16.)

In response, NRT Missouri contends that its principal place of business is New Jersey. To support this contention, NRT Missouri submits the sworn declaration of its General Counsel, Michael Duhig, who attests that "[a]lthough business is carried out in Missouri, all NRT [Missouri's] business is subject to the control of [its] officers in the

NRT [Missouri] corporate headquarters in New Jersey." The affidavit includes a list of people who Mr. Duhig states are officers of NRT Missouri who live in New Jersey and work at the New Jersey headquarters. (Doc. No. 24-1.)

In reply, Plaintiffs submit information readily available on the Internet, showing that some of the individuals identified by Mr. Duhig as officers of NRT Missouri actually hold themselves out as officers of either NRT LLC, or Realogy Corporation.

Upon review of the record, the Court concludes that Defendants have not met their burden of establishing that NRT Missouri's principle place of business is not Missouri. Thus, as all Plaintiffs and both Defendants are citizens of Missouri for purposes of CAFA, jurisdiction under CAFA does not exist.[4]

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand is **GRANTED**. (Doc. No. 15.)

**IT IS FURTHER ORDERED** that the Clerk of Court shall take all necessary steps to **REMAND** this case to the Circuit Court of St. Louis County, Missouri, where the action was filed.

---

[4] Because the Court concludes that minimal diversity of citizenship under CAFA does not exist, the Court need not address Plaintiffs' argument that the mandatory "local controversy exception" (sometimes called the "home state exception") to CAFA jurisdiction applies here.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss is **DENIED as moot** without prejudice to Defendants' right to file such a motion in state court.  (Doc. No. 19.)

                                                                          _____
                                                                          AUDREY G. FLEISSIG
                                                                          UNITED STATES DISTRICT JUDGE

Dated this 22nd day of May, 2013.